**KELLY LAW PLLC**
JAMES D. KELLY, ESQ.
NH BAR # 16177
16 BROAD STREET
NASHUA, NH 03064
JIM@KELLYLAWNH.COM
PHONE: 603-809-4230
FAX: 603-386-6669

[Additional Counsel On Signature Page]

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **KATHLEEN HOLT, JOSE RUVALCABA, and STEPHANIE BAUMAN, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**FOODSTATE, INC., d/b/a MEGAFOOD, d/b/a INNATE RESPONSE FORMULAS,**<br><br>**Defendant.** | Case No.: _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>**1) BUSINESS & PROFESSIONS CODE §§ 17200, ET SEQ. (CALIFORNIA UNFAIR COMPETITION LAW);**<br><br>**2) CALIFORNIA'S BUS. & PROF. CODE §§ 17500 ET SEQ.;**<br><br>**3) CALIFORNIA'S HEALTH AND SAFETY CODE § 110660;**<br><br>**4) BUSINESS & PROFESSIONS CODE § 17533.7;**<br><br>**5) NEGLIGENT MISREPRESENTATION; AND**<br><br>**6) INTENTIONAL MISREPRESENTATION**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. KATHLEEN HOLT ("HOLT"), JOSE RUVALCABA ("RUVALCABA"), and Stephanie Bauman ("BAUMAN") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action complaint against FOODSTATE, INC., d/b/a MEGAFOOD, d/b/a INNATE RESPONSE FORMULAS ("FoodState" or "Defendant") for Defendant's false and/or misleading promotion of its Mega Food products and Innate Response Formulas products as, *inter alia*, primarily consisting of and providing vitamins and nutrients from whole foods[1] as opposed to synthetically created vitamins or processed extracts and failure to disclose the presence and use of stearic acid.

2. Plaintiffs also bring this class action complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the actions of FoodState in labeling Defendant's health supplement products with the false designation "Made in the U.S.A."  The health supplement products are sold via Defendant's website, other retailer's websites, and in various stores throughout the United States.

3. The nationwide advertising, promotion, marketing, packaging and selling of FoodState's Mega Food  Products ("Mega Food Product"), as well as FoodState's Innate Response Formulas Products ("Innate Products" collectively, "FoodState Products"), contravenes California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*., California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq*., California Health and Safety Code § 110660 and California Business &

---

[1] Such as Carrots, Cabbage, Broccoli, Oranges, Organic Brown Rice, Cranberries and Blueberries, and Saccharomyces Cerevisiae (nutritional yeast). *See* http://www.megafood.com/our-foodstate-nutrients

Professions Code 17533.7, and constitutes negligent misrepresentation and intentional misrepresentation. This conduct caused Plaintiffs and the putative class members damages, and requires relief to mitigate the risk of further damages.

4.    Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

5.    Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers of the named Defendant.

## NATURE OF ACTION

### "Whole Foods"

6.    The term "whole food" is sometimes used by manufacturers, such as FoodState, to describe a product that has been processed or refined as little as possible, remains in its natural, but dehydrated, state.

7.    The term "whole food" may convey the message that the product is a healthier choice than competing products that contain more processed, extracted or synthetic ingredients (particularly standardized vitamins and minerals) that have lost their potency, and that the product is better or worth a premium price.

8.    The FoodState Products, which have been packaged, advertised, marketed, promoted and sold by FoodState to Plaintiffs and other consumers similarly situated, were described by Defendant as containing nutrients from "whole foods." [2]

---

[2] *See:* http://www.megafood.com/authentic-nourishment

9.  FoodState lists the names of some whole foods on the Supplement Facts label.

10. Although the FoodState Products contain some whole food ingredients, the FoodState Products also contain vitamins, minerals and/or nutrients from other sources, which is not highlighted for consumers.

11. As a consequence of Defendant's practices, Plaintiffs and other consumers similarly situated have purchased the FoodState Products under the impression that, by consuming the product they would be enjoying the benefits associated with a product which they reasonably believed, based upon Defendant's representations alleged herein, at least substantially contained vitamins and minerals from whole foods (and/or did not contain stearic acid).

12. Each consumer, including each of the Plaintiffs, was exposed to similar representations and/or omissions on the packaging for the FoodState Products, as well as on Defendant's website, prior to purchasing the product.

13. Defendant's labeling and advertising did not identify stearic acid as an ingredient in FoodState Products.  Some consumers, including Plaintiffs, try to avoid stearic acid in their food.

14. Defendant labels Defendant's health supplement products as "Made in the U.S.A."

15. The "Made in USA" statement is on the label of Defendant's Innate Products.

16. The Innate Products, however, include ingredients sourced from outside the United States so are not "Made in USA".

17. As a result of Defendant's representations and/or omissions regarding the FoodState Products, Plaintiffs and other consumers similarly situated may have overpaid for the product and/or purchased product they otherwise would

not have purchased.

18. This action seeks, among other things, damages for Class members as a result of Defendant's conduct alleged herein.

## JURISDICTION AND VENUE

19. The Court has jurisdiction over Plaintiffs' claims for damages, restitution, injunctive relief, and declaratory relief arising from Defendant's business practices as alleged herein.

20. Defendant sells its products in retail stores (including retail stores in California), and allows retailers to sell its products online.

21. The Court has jurisdiction over the alleged violations of California law under 28 U.S.C. § 1332(d), as the aggregated claims of the individual members of the Class exceed the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed Plaintiffs' class, on the one hand, and Defendant, on the other hand, are citizens of different states.

22. Venue is proper because Defendant resides within this District Court.

23. Upon information and belief, Defendant sells products purchased by consumers in the State of California and the State of New Hampshire, is incorporated in the State of Delaware, has sufficient minimum contacts with the State of California, and otherwise purposely avails itself of the markets in the State California through the promotion, sale, and marketing of its products in New Hampshire and California, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

## PARTIES

24. Plaintiffs HOLT, RUVALCABA, and BAUMAN are, and at all relevant times were, each a natural person residing in the State of California.

25. Plaintiffs are informed and believe, and thereon allege, that Defendant's principal place of business is 8 Bowers Road, Derry, New Hampshire, 03038, and is incorporated under the laws of the State of Delaware.

## GENERAL ALLEGATIONS

26. FoodState, is a producer in the United States of dietary supplements. Defendant sells its MegaFood Products in varying quantities, as well as its Innate Response Formulas Products throughout the United States, including in California.

27. Defendant markets its products through various mediums, including its website and YouTube videos. Defendant does not highlight the use of synthetic or processed nutrients or show the addition of synthetic or processed nutrients to its whole foods.

28. During the "Class Period" as defined in paragraph 86, Plaintiffs saw Defendant's labeling, and purchased FoodState Products after doing so.

29. Prior to purchasing FoodState Products, HOLT visited FoodState's website.

30. Prior to purchasing Defendant's Products, RUVALCABA visited Defendant's website.

31. Health conscious people, like HOLT and RUVALCABA, often rely in part on a company's statements, including those on a company's website and packaging, when purchasing that company's products.

32. On March 13, 2014, after seeing FoodState labeling, HOLT purchased a bottle of FoodState's Products from a retailer in La Mesa, California.

33. HOLT paid $36.99 pre-tax for the FoodState Product she purchased.

34. HOLT was seeking a dietary health supplement that provided nutrients primarily from whole foods and without stearic acid.

35. HOLT consumed the FoodState Product after purchasing it.

36. Sometime after purchasing and consuming the FoodState Product, HOLT

learned that it was likely that One Daily Multivitamin did not provide the full amount of vitamins and minerals solely from the stated amounts of whole foods as listed by Defendant on the Supplement Facts panel or on Defendant's website.

37. On March 23, 2015, after seeing FoodState labeling, RUVALCABA purchased a bottle of FoodState Products from Pure Formulas, an online retailer.

38. RUVALCABA paid $37.96 pre-tax for the FoodState Product he purchased, under its Innate Response Formulas Brand.

39. RUVALCABA was seeking a dietary health supplement that provided nutrients primarily from whole foods and did not contain stearic acid. Additionally, RUVALCABA sought out a product that was made in the United States.

40. RUVALCABA consumed the FoodState Product after purchasing it.

41. Sometime after purchasing and consuming the FoodState Product, RUVALCABA learned that it was likely that FoodState Products did not provide the full amount of vitamins and minerals solely from the stated amounts of whole foods as listed by Defendant on the FoodState Products supplemental facts or on Defendant's website.

42. On March 11, 2015, after seeing FoodState labeling, BAUMAN purchased a bottle of FoodState Products from an online retailer.

43. BAUMAN was seeking a dietary health supplement that provided nutrients primarily from whole foods and which did not contain stearic acid. Additionally, BAUMAN, sought out a product that was made in the United States.

44. BAUMAN consumed the FoodState Product after purchasing it.

45. Sometime after purchasing and consuming the FoodState Product,

BAUMAN determined that FoodState Products may not provide the full amounts of vitamins and minerals solely from the stated amounts of whole foods as listed by Defendant on the FoodState Products supplemental facts or on Defendant's website.

46. Stearic acid was included in the FoodState Products, listed and referenced as "vegetable lubricant."  21 C.F.R. 101(a)(1) requires using the "common or usual" name of the ingredient. Defendant's use of stearic acid, calcium stearate or any other stearate/stearic acid as a lubricant rather than a filler or binder, as listed in 21 C.F.R. 101.4(g), does not exempt it from compliance with the aforementioned statutes as 21 C.F.R. 101.4(g) lists "excipients" (which a lubricant qualifies as) and uses the term "such as" in order for the statute to be a non-exhaustive list.

47. Defendant's label (front panel & Supplement Facts) may communicate that the product is composed primarily or wholly of these whole fruits and vegetables and these whole fruits and vegetables provide the nutrients in the products, and that the products do not contain stearic acid.  Plaintiffs were, and other purchasers may be, misled and deceived in this regard by the product's label, along with other forms of marketing and advertising.

48. Plaintiffs and consumers similarly situated are not informed by Defendant exactly how much whole food derived nutrients or synthetic sources are used to provide the listed amount of vitamins and minerals from each capsule or that the products contain stearic acid.

49. The scope of Defendant's labeling and advertising of the FoodState Products is uniform throughout the nation.

50. Plaintiffs' claims that Defendant's product labels and associated advertising are misleading and deceptive does not seek to bring a private action against the product's formal name and labeling in areas for which the Food and Drug

8

Administration ("FDA") has promulgated regulations implementing the Federal Food and Drug and Cosmetic Act ("FFDCA"). Plaintiffs' claim is, instead, predicated on the fact that the labeling and associated advertising is misleading and deceptive even if in compliance with the minimum requirements set forth by the FDA. As a result of Defendant's representations and/or omissions, Plaintiffs likely overpaid for the FoodState Products because the value of the products was diminished at the time of the sale. For all the reasons stated herein, Plaintiffs suffered injury in fact and has lost monies as a result of Defendant's actions.

51. Defendant's FoodState Products labeled similarly to the products Plaintiffs purchased include the following, among others:

**MegaFood**:

1. Adrenal Strength®
2. Alpha Teen™
3. Baby and Me™
4. Baby and Me™ - CA Blend
5. Baby and Me™   Herb Free
6. Baby and Me™   Herb Free – CA Blend
7. Balanced B Complex
8. Balanced Minerals
9. Blood Builder®
10. Bone
11. Boosters
12. Calcium
13. Calcium, Magnesium & Potassium
14. Complex C
15. E & Selenium

16. Extinguish™
17. GTF Chromium 100 mcg
18. Kid's One Daily
19. Kid's B Complex
20. Kid's Vitamin D3
21. Magnesium
22. Medi-Safe™
23. Men Over 40™
24. Men Over 40™ - CA Blend
25. Men Over 40™ One Daily
26. Men Over 55™
27. Men's
28. Men's – CA Blend
29. Men's One Daily
30. One Daily
31. One Daily Iron Free
32. Prostate Strength™
33. Quercetin Strength™
34. Skin, Nails & Hair™
35. Skin, Nails & Hair™ - CA Blend
36. Selenuim
37. Thyroid Strength®
38. Ultra C-400
39. Un-Stress®
40. Vegan B12™
41. Vegan Daily™
42. Vegan Protect™

43. Vision Strength®

44. Vitamin D3 1000 IU

45. Vitamin D3 2000 IU

46. Women Over 40™

47. Women Over 40™ - CA Blend

48. Women Over 40™ One Daily

49. Women Over 55™

50. Women's One Daily

51. Women's One Daily – CA Blend

52. Women's

53. Zinc

**Innate Response Formulas**[3]:

54. Antioxidants - 90 tablets

55. B Complex - 180 tablets

56. B Complex - 90 tablets

57. Baby & Me™ Trimester I & II - 120 tablets

58. Baby & Me™ Trimester III & Post - 120 tablets

59. Food Multi III BioMax - 180 tablets

60. Food Multi III BioMax - 90 tablets

61. GTF Chromium - 90 tablets

62. Homocysteine Response™ - 90 tablets

63. Iron Response - 90 tablets

64. JCTH® - 180 tablets

65. JCTH® - 90 tablets

66. Men Over 40 One Daily Iron Free - 60 tablets

---

[3] http://www.innateresponse.com/pindex.asp

67. Men Over 40™ Iron Free - 120 tablets

68. Mens One Daily Iron Free - 60 tablets

69. One Daily - 90 tablets

70. One Daily Iron Free - 90 tablets

71. Proteolytic Enzyme Clinical Strength - 120 capsules

72. Selenium - 90 tablets

73. Tension Defense™ - 114 G

74. Thyroid Response® Complete Care - 90 tablets

75. Vitamin C-400 - 180 tablets

76. Vitamin D-3 2,000 IU - 180 tablets

77. Vitamin D-3 2,000 IU - 60 tablets

78. Vitamin D-3 2,000 IU - 90 tablets

79. Women Over 40™ - 120 tablets

80. Women Over 40™ - 60 tablets

81. Women Over 40™ One Daily - 60 tablets

82. Womens Multi - 60 tablets

83. Womens One Daily - 60 tablets

52. Plaintiffs' allegations regarding the FoodState Products are applicable to these other dietary supplements claiming to contain nutrients from whole food and/or omitting specific mention of stearic acid.

53. Each of these products listed above sold by Defendant under its MegaFood and Innate Response brands are substantially similar to the products purchased by Plaintiffs.

54. Defendant manufactures, markets and/or sells Defendant's Innate Products that have been represented on Defendant's website as "Made in USA."

55. Based on information and belief, contrary to the representation, the Innate Products are wholly and/or substantially manufactured or produced with

component parts that are manufactured outside of the United States.

56. On information and belief, Defendant charged excess monies for Defendant's Innate Products in comparison to Defendant's competitors during the entirety of the relevant statutory time period, based on the false "Made in USA" designation.  California and Federal laws are designed to protect consumers from such false representations.

57. BAUMAN purchased the Adrenal Response online via a third-party retailer's website.   At the time of BAUMAN's purchase, the label shown on Defendant's and the third-party retailer's websites described the product as "Made in U.S.A", when the product actually was made and/or contained component parts made outside of the United States.  Accordingly, Defendants are not entitled to lawfully make a "Made in USA" representation of such products.

58. In each case when BAUMAN and putative Class members purchased a Class Product, they relied upon Defendant's "Made in USA" representation in their purchasing decision. BAUMAN believed at the time she purchased the FoodState Product that she was purchasing a superior quality product, as well as supporting U.S. jobs and the U.S. economy, and therefore suffered an "injury in fact."

59.  The precise amount of damages will be proven at the time of trial.

## I.   FIRST CAUSE OF ACTION FOR VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.
### (California's Unfair Competition Law)

60. Plaintiffs repeat, re-allege and incorporate herein by reference the above allegations as set forth fully herein.

61. Business and Professions Code Section § 17200 defines "unfair competition"

in a manner that includes the labeling and advertising practices of Defendant as alleged herein.

62. Plaintiffs and Defendant are each "person[s]" as defined by California Business & Professions Code § 17201.  Section 17204 authorizes a private right of action on both an individual and representative basis.

63. By and through Defendant's conduct alleged in further detail above and herein, Defendant engaged in conduct which constitutes actionable business practices under Bus. & Prof. Code § 17200, *et seq*.

64. Plaintiffs and the putative class reserve the right to allege other conduct by Defendant which fall within the coverage of Bus. & Prof. Code § 17200, *et seq*.

65. Plaintiffs also seeks attorneys' fees and costs pursuant to, *inter alia*, California Civil Code section 1021.5.

## II.    SECOND CAUSE OF ACTION FOR VIOLATION OF CAL. BUS. & PROF. CODE §§ 17500 ET SEQ.
### (California's False Advertising Law)

66. Plaintiffs repeat, re-allege and incorporate herein by reference the above allegations as if set forth fully herein.

67. Plaintiffs bring this cause of action on behalf of themselves and on behalf of the putative class.

68. The acts and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore violates Business & Professions Code §§ 17500, *et seq*.

69. Plaintiffs and members of the putative class have suffered injury in fact and have lost money or property as a result of Defendant's false advertising, as set forth more fully herein.

70. As a direct and proximate result of the aforementioned acts and representations of Defendant, Defendant received and continues to hold monies rightfully belonging to Plaintiff and other similarly situated consumers who were led to purchase, purchase more of, or pay more for, the FoodState Products, due to the above-described acts of Defendant, during the Class Period.

## II.  THIRD CAUSE OF ACTION FOR VIOLATION OF CAL. HEALTH & SAFETY CODE §§ 110660 (California's Sherman Law)

71. Plaintiffs repeat, re-allege and incorporate herein by reference the above allegations as if set forth fully herein.

72. Plaintiffs bring this cause of action on behalf of themselves and on behalf of the putative class.

Section 110660 states, "any food is misbranded if its labeling is false or misleading in any particular." Section 110660 is part of California's Sherman Food, Drug and Cosmetic law, California Health & Safety Code § 109875, *et seq.* (the "Sherman law"). Defendant has violated § 110660 because the product label misleads and deceives consumers as alleged herein.

## III. FOURTH CAUSE OF ACTION FOR VIOLATION OF CAL. BUS. & PROF. CODE §17533.7 (California's Made in U.S.A. Law)

73. Plaintiffs repeat, re-allege and incorporate herein by reference the above allegations as if fully stated herein.

74. Business & Professions Code § 17533.7 provides:

It is unlawful for any person, firm, corporation or association to sell or offer for sale in this State any merchandise on which merchandise or on its container there appears the words "Made in

U.S.A.," "Made in America," "U.S.A.," or similar words when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States.

75.  As alleged herein, Defendant violated Bus. & Prof. Code § 17533.7

76.  As a direct and proximate result of Defendant's violations of Bus. & Prof. Code § 17533.7, Plaintiff and the Class are entitled to restitution of excess monies paid to Defendant by Plaintiff and the Class relating to the false "Made in USA" representations set forth on the Defendant's website in the marketing and description of Defendant's offending FoodState Products.

77.  In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees, which is available to a prevailing plaintiff in class action cases such as this matter.

## IV. FIFTH CAUSE OF ACTION
## FOR NEGLIGENT MISREPRESENTATION

78.  Plaintiffs repeat, re-allege and incorporate herein by reference the above allegations as if fully stated herein.

79.  As alleged herein, Defendant's labeling and advertising negligently misrepresents the FoodState Products.

80.  Plaintiffs and other similarly situated persons saw, believed, and relied upon Defendant's advertising representations and, in reliance on them, purchased the products, as described above.

81.  As a proximate result of Defendant's negligent misrepresentations, Plaintiffs and other consumers similarly situated were induced to purchase, purchase more of, or pay more for, the FoodState Products, due to the unlawful acts of Defendant, in an amount to be determined at trial, during the Class Period.

## V. SIXTH CAUSE OF ACTION
## FOR INTENTIONAL MISREPRESENTATION

82. Plaintiffs repeat, re-allege and incorporate herein by reference the above allegations.

83. As alleged herein, Defendant's labeling and advertising intentionally misrepresents the FoodState Products.

84. As a proximate result of Defendant's intentional misrepresentations, Plaintiffs and other consumers similarly situated were induced to spend an amount of money to be determined at trial on the FoodState Products.


## CLASS ACTION ALLEGATIONS

85. Plaintiffs and the members of the Class have all suffered injury in fact as a result of the Defendant's conduct as alleged herein.

86. The "Class Period" means January 15, 2011 to the present.

87. Plaintiffs bring this lawsuit on behalf of themselves and the other consumers similarly situated. Subject to additional information obtained through further investigation and/or discovery, the proposed "Class" consists of:

> Any purchaser in the United States of Defendant's vitamin supplements, including products sold under the MegaFood and Innate Response Formulas Brands (individually, a "product" and collectively, the "products"), who purchased any product between January 15, 2011 and the present.

Excluded from the Class are Defendant and any of its officers, directors, and employees, or anyone who purchased the FoodState Products (or Defendant's other products with similar labeling and/or where the presence of stearic acid was not disclosed) for the purposes of resale. Plaintiffs reserve

the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

88. ***Numerosity***. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains several thousands of members.

89. ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Class predominate over any questions affecting only individual Class members. All members of the Class have been subject to the same conduct and their claims are based on the standardized labeling and marketing. The common legal and factual questions include, but are not limited to, the following:

    (a)    Whether the FoodState Products contain synthetic nutrients as the predominant source of vitamins and minerals;

    (b)    Whether the FoodState Products contains stearic acid;

    (c)    Whether FoodState's claims alleged herein are untrue, or are misleading, or reasonably likely to deceive;

    (d)    Whether Defendant's conduct is an unlawful act or practice within the meaning of California Business & Professions Code § 17200;

    (e)    Whether Defendant's conduct is a deceptive act or practice within the meaning of California Business & Professions Code § 17200;

    (f)    Whether Defendant's conduct is an unfair act or practice within the meaning of California Business & Professions Code § 17200;

    (g)    Whether Defendant's advertising is untrue or misleading within the meaning of California Business & Professions Code §

17500;

(h)     Whether Defendant's advertising is untrue or misleading in violation of California Health And Safety Code § 110660;

(i)     Whether Defendant's advertised its products as "Made in the USA" (or similar words) when most of the ingredients were sourced from outside of the United States; and

(j)     Whether Defendant, through its conduct, received money that, in equity and good conscience, belongs to Plaintiff and members of the Class.

90.  *Typicality*. Plaintiffs' claims are typical of the claims of the members of the Class in that Plaintiffs are members of the Class that Plaintiffs seek to represent. Plaintiffs, like members of the proposed Class, purchased the FoodState Products after exposure to the same or substantially similar labeling and marketing as described herein.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent members of the Class. Defendant's labeling and marketing regarding its other products containing nutrients from whole foods and/or stearic acid are substantially similar to the labeling and marketing of the FoodState Products. Defendant has no defenses unique to the Plaintiffs.

91.  *Adequacy of Representation*. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel experienced in consumer protection law, including class actions. Plaintiffs have no adverse or antagonistic interest to those in the Class, and will fairly and adequately protect the interests of the Class. Plaintiffs' attorneys are aware of no interests adverse or antagonistic to those of the Plaintiffs and proposed Class.

92. ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger inconsistent or contradictory judgments arising from the same set of facts regarding identical or substantially similar products. Individualized litigation would also increase the delay and expense to all parties, the court system, and the issues raised by this action. The damages or other financial detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendant. It would be virtually impossible for members of the proposed Class to effectively redress the wrongs to them individually. Even if the members of the proposed Class could afford such litigation, the court system should not bear that burden. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Therefore, a class action is maintainable pursuant to California Code of Civil Procedure Section 382 and California Rules of Court, Rule 3.764.

93. Unless a Class is certified, Defendant will retain monies received as a result of Defendant's conduct alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that judgment be entered against Defendant, and Plaintiff and Class members be awarded damages from Defendant as follows:

    a. Certifying the Class as requested herein;

    b. Appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as

Class Counsel;

c.  An order requiring Defendant to pay restitution to Plaintiffs and all members of the Class and to restore to the Plaintiffs and members of the Class funds acquired by means of any act or practice alleged herein;

d.  Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;

e.  Statutory prejudgment and post judgment interest;

f.  Special, general, and compensatory damages to Plaintiffs and Class members;

g.  Reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5;

h.  Costs of this suit; and

i.  Awarding any and all other relief that this Court deems necessary or appropriate.

## Trial By Jury

94.  Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

Dated: November 21, 2017                    **KELLY LAW PLLC**

BY: /s/ *JIM KELLY*

JAMES D. KELLY, ESQ.
NH BAR # 16177
16 BROAD STREET
NASHUA, NH 03064
JIM@KELLYLAWNH.COM
PHONE: 603-809-4230
FAX: 603-386-6669
*ATTORNEY FOR PLAINTIFFS*

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (CA SBN: 249203)
ak@kazlg.com
*Pro Hac Vice To Be Filed*
245 Fischer Avenue, Suite D1
Costs Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
*Attorney for Plaintiffs*

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (CA SBN: 225557)
*Pro Hac Vice To Be Filed*
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3351
Telephone: 619-233-7770
Facsimile: 619-297-1022
*Attorney for Plaintiffs*