# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

KATHLEEN HOLT, JOSE RUVALCABA,      Case No.: 1:17-cv-00637-LM
and STEPHANIE BAUMAN, Individually
and on Behalf of All Others Similarly
Situated,

         **Plaintiffs,**

v.

FOODSTATE, INC., d/b/a MEGAFOOD,
d/b/a INNATE RESPONSE FORMULAS

         **Defendant.**


## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................. iii

I. INTRODUCTION ........................................................................... 1

II. FACTUAL BACKGROUND AND PROCEDUREAL HISTORY .................................. 3

III. THE SETTLEMENT ....................................................................... 4

    A. THE SETTLEMENT CLASS ....................................................................4

    B. SETTLEMENT RELIEF ..........................................................................5

        1. Monetary Compensation and Distribution ....................................5

        2. Injunctive Relief and Future Conduct by Defendant .......................5

        3. Contingent *Cy Pres* Distribution ....................................................6

    C. SCOPE OF RELEASE ............................................................................6

    D. SETTLEMENT CLAIMS PROCESS ...........................................................7

    E. OPPORTUNITY TO OPT-OUT AND OBJECT .............................................8

    F. CLASS NOTICE ..................................................................................8

    G. CLASS REPRESENTATIVES' APPLICATION FOR INCENTIVE AWARDS .............8

    H. CLASS COUNSELS' APPLICATION FOR ATTORNEYS' FEES AND COSTS .........9

IV. LEGAL STANDARDS FOR PRELIMINARY SETTLEMENT CLASS APPROVAL
    OF A CLASS ACTION SETTLEMENT ....................................................... 10

V. THERE IS A PRESUMPTION OF FAIRNESS ATTACHED TO THIS
    SETTLEMENT AGREEMENT .................................................................... 11

    A. ARM'S LENGTH MEDIATIONS BEFORE THE HON. JUDGE LEO PAPAS (RET.) AND THE
        HON. PETER D. LICHTMAN (RET.) ...................................................... 11

    B. SUFFICIENT DISCOVERY HAS BEEN COMPLETED TO ALLOW ALL PARTIES TO ACT
        INTELLIGENTLY ............................................................................. 12

    C. COUNSEL IS EXPERIENCED IN SIMILAR LITIGATION ................................ 12

    D. PLAINTIFFS DO NOT ANTICIPATE MANY OBJECTIONS ............................. 12

VI.    THE COURT SHOULD PRELIMINARILY CERTIFY THIS CLASS FOR
       PURPOSES OF SETTLEMENT ...................................................................... 13

       A.  THE PROPOSED CLASS IS SUFFICIENTLY NUMEROUS ...............................................13

       B.  THE COMMONALITY REQUIREMENT IS SATISFIED .................................................. 14

       C.  THE TYPICALITY REQUIREMENT IS SATISFIED .......................................................15

       D.  THE ADEQUACY REQUIREMENT IS SATISFIED.......................................................16

       E.  COMMON QUESTIONS SUFFICIENTLY PREDOMINATE ...............................................17

       F.  VARIATIONS IN STATE LAWS SUPPORTS PLAINTIFFS' CONTENTION THAT THE
           VARIATIONS DO NOT PRESENT MANAGEABILITY CONCERNS ...............................18

       G.  THE SUPERIORITY REQUIREMENT IS SATISFIED .......................................................22

VII.   THE COURT SHOULD APPOINT THE CLASS REPRESENTATIVES AND
       CLASS COUNSEL............................................................................................ 22

VIII.  THE PROPOSED NOTICE TO THE SETTLEMENT CLASS IS APPROPRIATE.......23

IX.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED..................................25

X.     CAFA NOTICE ...............................................................................................25

XI.    CONCLUSION.................................................................................................25

TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*In re Am. Med. Sys., Inc.,*
  75 F.3d 1069 (6th Cir. 1996) ·················································· 15

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) ······················································ *passim*

*Andrews v. Bechtel Power Corp.,*
  780 F.2d 124 (1st Cir. 1985) ·················································· 16

*Arnold v. FitFlop USA, LLC,*
  2014 U.S. Dist. LEXIS 58800 (S.D. Cal. Apr. 28, 2014) ···················· 9, 17

*Bezdek v. Vibram U.S.A. Inc.,*
  79 F. Supp. 3d 324 (D. Mass. 2015) ····································· 11, 18

*In re Bos. Scientific Corp. Sec. Litig.,*
  604 F. Supp. 2d 275 (D.Mass. 2009) ···································· 15, 16

*Brenner v. J. C. Penney Co.,*
  No. 13-11212, 2013 U.S. Dist. LEXIS 149607 (D.Mass. Oct. 10, 2013) ·········· 9, 23

*Bristol-Myers Squibb Co. v. Superior Court,*
  137 S. Ct. 1773 (2017) ························································· 4

*Burns v. Elrod,*
  757 F.2d 151 (7th Cir. 1985) ··················································· 8

Colgan v. Leatherman Tool Group, Inc.,
  135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006) ················ 19

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.,*
  2015 U.S. Dist. LEXIS 154602 (D.N.H. Nov. 16, 2015) ···················· 15, 25

*Donachy v. Intrawest United States Holdings, Inc.,*
  No. 10-4038 (RMB/KMW), 2012 U.S. Dist. LEXIS 34029 (D.N.J. Mar. 14, 2012) ····· 20

*Durrett v. Housing Auth.,*
  896 F.2d 600 (1st Cir. 1990) ·················································· 10

*Garcia-Rubiera v. Calderon,*
  570 F.3d 443 (1st Cir. 2009) ·················································· 15

*In re Gen. Motors Corp. Pick-up Truck Fuel Tanks Products Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ 11

*Grant v. Capital Mgmt. Servs., L.P.*,
    2013 U.S. Dist. LEXIS 174190 (S.D. Cal. Dec. 11, 2013) ⋯⋯⋯⋯⋯ 9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ 14, 19

*Hochstadt v. Boston Scientific Corp.*,
    708 F.Supp.2d. 95 (D.Mass. 2010) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ 10

*Johnson v. Midland Credit Management Inc.*,
    2012 WL 5996391 (N.D. Ohio Nov. 29, 2012) ⋯⋯⋯⋯⋯⋯⋯⋯⋯ 23

*Kenneth R. ex rel. Tri-County CAP, Inc. v. Hassan*,
    293 F.R.D. 254 (DD.N.H. 2013) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ 13

*In re Lupron Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D.Mass. 2005) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ 10, 11

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
    671 F. Supp. 819 (D.Mass. 1987) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ 11

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
    270 F.R.D. 45 (D.Mass. 2010) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ *passim*

*Macarz v. Transworld Sys., Inc.*,
    201 F.R.D. 54 (D.Conn. 2001) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ 23

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ 24

*In re Neurontin Mkg. & Sales Practices Litig.*,
    244 F.R.D. 89 (D.Mass. 2007) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ 14

*In re New Motor Vehicles Canadian Expert Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ 19

*Officers for Justice v. Civil Service Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ 10

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ 13

*In re Pharm Indus. Average Wholesale Price Litig.*,
  588 F.3d 24 (1st Cir. 2009) ·······················································11

*In re Pizza Time Theatre Sec. Litigation*,
  112 F.R.D. 15 (N.D. Cal. 1986) ·················································19

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ·········································10, 15

*In re Relafen Antitrust Litigation*,
  231 F.R.D. 52 (D.Mass. 2005) ··················································10

*Rolland v. Cellucci*,
  Civ. No. 98-30208, 1999 WL 34815562 (D.Mass. Feb. 2, 1999) ···········13

*Saltzman v. Pella Corp.*,
  257 F.R.D. 471 (N.D. Ill. 2009) ················································23

*Scott v. First Am. Title Ins. Co.*,
  No. 06-cv-286, 2008 WL 1914296 (D.N.H. Apr. 28, 2008) ···················8

*Scovil v. FedEx Ground Package Sys.*,
  2014 U.S. Dist. LEXIS 33361 (D. Me. Mar. 14, 2014) ·······················9

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
  323 F.3d 32 (1st Cir. 2003) ······················································20

*In re Sonus Networks, Inc.*,
  Sec. Litig., Civ. No. 04-10294, 2007 WL 2826622 (D.Mass. Sept. 25, 2007) ···········14

*In re Stockeryale, Inc.*,
  No. 1:05cv00177-SM, 2007 U.S. Dist. LEXIS 94004 (D.N.H. Dec. 18, 2007)·············9

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011)······················································20

*Swack v. Credit Suisse First Boston*,
  230 F.R.D. 250 (D.Mass. 2005) ·············································21-22

*Trazo v. Nestlé USA, Inc.*,
  No. 5:12-CV-2272 PSG, 2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013)······19

*In re Tyco Intern., Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007)···········································10

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)·································· 20, 23

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000) ······························· 20

*West Va. v. Chas. Pfizer & Co.*,
    440 F.2d 1079 (2d Cir. 1971) ······························ 10

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012)······························· 15

## STATUTES

15 U.S.C. § 45a ·················································· 7

28 U.S.C. § 1715(b) ············································· 25

N.H. Rev. Stat. Ann. § 358-A:2 ······························· 22

## RULES

Fed. R. Civ. P. 23(a)(1) ········································ 13

Fed. R. Civ. P. 23(a)(2) ········································ 14

Fed. R. Civ. P. 23(b)(3) ·································· 18, 21, 23

Fed. R. Civ. P. 23(c)(2)(B) ································ 23, 24

Fed. R. Civ. P. 23(e)············································ 10

Fed. R. Civ. P. 23(e)(1) ········································· 8

Fed. R. Civ. P. 23(e)(1)(B) ····································· 24

Fed. R. Civ. P. 23(e)(2) ········································ 11

Rule 23(h)························································· 9

Fed. R. Civ. P. 30(b)(6) ······································· 4, 12

## OTHER

*4 Herbert B. Newberg, Newberg on Class Actions*
    (4th ed. 2002 and Supp. 2004) ······················· 10

*Making Class Actions Work: The Untapped Potential of the Internet*,
    69 U. Pitt. L. Rev. 727 (2008) ························ 24

## I. INTRODUCTION

Plaintiffs Kathleen Holt, Jose Ruvalcaba, and Stephanie Bauman (the "Plaintiffs") submit this renewed memorandum of points and authorities in support of the joint motion for preliminary approval of the proposed class action settlement and certification of settlement class (the "Settlement") of this lawsuit (the "Action"). The terms of the Settlement are set forth in the Proposed Class Action Settlement and the Addendum thereto (the "Agreement" or "Agr.") filed herewith as Exhibit A[1] to the Declaration of Abbas Kazerounian ("Kazerounian Decl."), ¶ 59.[2]

FoodState is a specialty dietary supplement company located in New Hampshire. Exhibit B, 11:3-13. Plaintiffs allege that defendant FoodState, Inc., d/b/a Megafood, d/b/a Innate Response Formulas' ("Defendant" or "FoodState") consumable products (the "Covered Products," Agr. § II.J) were: 1) deceptively represented as "Made in the USA" when the Covered Products contained foreign-sourced ingredients; 2) deceptively represented as "100% Whole Food Supplement" when they contained synthetically created vitamins or processed extracts; and 3) labeled in such a way as to omit the presence and use of stearic acid, calling it only generically "Vegetable Lubricant." *See* Dkt. No. 1, Complaint ("Compl."), ¶¶ 9-10, 15-16, and 46.

Plaintiffs contend that Defendant's conduct violated: 1) California's Unfair Competition Law, Cal. Bus & Prof. Code § 17200; 2) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500; 3) California's Sherman Law, Health and Safety Code § 110660; 4) California Business & Professions Code § 17533.7; and 5) negligent and intentional representation. Compl., ¶ 3. FoodState has and continues to deny liability, but has agreed to settle this Action to avoid the time and expense of litigation. Dkt. No. 11 (Answer, ¶ 145); Agr. § I.E.

---

[1] Exhibits are to the declaration of Abbas Kazerounian unless otherwise stated.
[2] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Settlement Agreement.

The Agreement provides for substantial monetary and non-monetary benefits to the Settlement Class and consumers in general. First, the Agreement requires Defendant to change its business practices by revising its statements on the labels of the Covered Products[3] and website to exclude any "Made in the USA," "100% Whole Food Supplement," and "Vegetable Lubricant" representations for a period of thirty months. Agr. at § IV.F.1. Second, the Agreement provides for a substantial financial benefit to the Settlement Class with a Settlement Fund of $2,100,000.00. *Id.* at § III.B.1. The members of the Settlement Class who submit Valid Claims can request $25.00 to $100, depending on how many Covered Products they purchased and whether they have included proof of purchase. *Id.* at § IV.D. In exchange for Defendant's payment and changes to its product labeling, Plaintiffs and the Settlement Class Members will release and forever discharge FoodState and the Released Persons from all claims, know or unknown, arising out of the allegations of this Action, excluding any bodily injury claims. *Id.* at § IX.A.9.

While Plaintiffs believe in a favorable determination on the merits, they have determined, after discovery and two private mediations, that the proposed Settlement provides significant benefits to the Settlement Class Members and it is in their best interests. *Id.* at § I.I.; Kazerounian Decl., ¶¶ 7-15. Plaintiffs also believe that the Settlement is appropriate considering the expense and amount of time required to continue the Action, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting such alleged false advertising claims. *Id.* at ¶ 15. Similarly, as evidenced by the Agreement, although Defendant denies liability and believes it has meritorious defenses, Defendant has determined that it is desirable to settle the Action. *Id.* at §§ I.E, § I.I.

---

[3] The Covered Products means the 500+ "products manufactured by FoodState and/or its affiliates or co-manufacturers, including vitamin supplements sold under the MegaFoods and Innate Response Formula brands." Agr. § II.J. Exhibit E to the Agreement contains a list of products manufactured by FoodState during the period covered by this Settlement Agreement. *See* Exhibit B to Kazerounian Declaration, at 14:5-20; and 15:12-14.

Accordingly, the Parties jointly move the Court for an order certifying a settlement class as more fully set forth herein and in the Proposed Order Preliminarily Approving the Proposed Settlement; preliminarily approving the proposed Settlement; appointing Kurtzman Carson Consultants ("KCC") as the Settlement Administrator; directing dissemination of class notice; approving Plaintiffs as Class Representatives; approving Abbas Kazerounian and Jason A. Ibey of the Kazerouni Law Group, APC, and Joshua B. Swigart of Hyde & Swigart, as Class Counsel; and, scheduling a Final Approval Hearing. A proposed order granting preliminary approval of the proposed class action settlement is submitted herewith. The proposed nationwide Settlement[4] satisfies all of the criteria for preliminary approval under Fed. R. Civ. P. 23(b)(3).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

FoodState manufactures and sells various vitamins and supplements, which are sold under the MegaFood brand name and the Innate Response Formulas brand name. Compl., ¶ 53; Exhibit B, 10:21-11:2. In the Complaint, Plaintiffs contend that FoodState violated several California laws by falsely and/or misleadingly promoting its Mega Food products and Innate Response Formulas products as, *inter alia*, primarily consisting of and providing vitamins and nutrients from whole foods as opposed to synthetically created vitamins or processed extracts and failure to disclose the presence and use of stearic acid. Plaintiffs also allege that the "Made in USA" statement on the labels of the Covered Products is false, deceptive, and/or misleading.

Plaintiffs seek damages and injunctive relief for Defendant's alleged misleading labeling pursuant to the following: (1) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code

---

[4] While the Plaintiffs intend that the descriptions set forth herein accurately reflect in summary fashion the terms of the settlement, in the event of a conflict between statements made herein and the Settlement Agreement, the Settlement Agreement controls. Plaintiffs do not intend to vary or modify the terms of the Settlement Agreement by any statements made herein.

§§ 17200, *et seq*.; (2) California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq*.; (3) California Health and Safety Code § 110660; (4) California Business & Professions Code 17533.7; and (5) negligent and intentional misrepresentation. *See* Compl., ¶ 3.

To reach a settlement of this Action, the Parties participated in good faith and arm's length negotiations, including a private mediation before the Honorable Peter D. Lichtman (Ret.), which followed a prior mediation before the Honorable Leo S. Papas (Ret.). *Id*. at § I.G; *see also*, Kazerounian Decl., ¶ 10. Plaintiffs also obtained informal discovery for mediation, as well as formal discovery through a Fed. R. Civ. P. 30(b)(6) confirmatory deposition of FoodState in April of 2018. Kazerounian Decl., ¶ 14. Additionally, prior to bringing the lawsuit, expert testing by Plaintiffs was conducted on two of the products (One Daily and Blood Builder) regarding their formulation. Kazerounian Decl., ¶ 9; *see also*, Compl., ¶¶ 33 and 57.

The action against FoodState was originally filed in the Southern District of California, Case No. 3:15-cv-00078-L-NLS (S.D. Cal.), on January 15, 2015, where that court granted in part and denied in part a motion to dismiss on December 31, 2015 (Exhibit C), but the action was subsequently dismissed without prejudice upon joint motion of the parties and later re-filed before the current Court on November 22, 2017. Kazerounian Decl., ¶¶ 8 and 11. Pursuant to the controlling decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1783 (2017), Plaintiffs filed this action in the present district where there is general jurisdiction over FoodState which is located in Manchester, New Hampshire. Exhibit B, 11:3-18.

## III.    THE SETTLEMENT

### A.    THE SETTLEMENT CLASS

The "Class" or "Settlement Class Members" means:

> All residents of the United States and its territories who purchased for personal use, and not resale or distribution, a Covered Product between January 15, 2011 and September 15, 2018.

Specifically excluded from the Settlement Class are the following:

1. FoodState and its respective affiliates, employees, officers, directors, agents, and representatives, and their immediate family members;
2. Settlement Class Counsel and partners, attorneys, and employees of their law firms;
3. The judges who have presided over the Litigation, the case identified in Paragraph I.B of the Agreement, or the mediations referenced in Paragraph I.E of the Agreement, and their immediate family members.

Agr. § III.A; Addendum to Settlement Agreement, p. 1 (modifying proposed class period).

**B.    SETTLEMENT RELIEF**

The Agreement provides for monetary and non-monetary benefits to the Class Members.

### 1.    Monetary Compensation and Distribution

FoodState has agreed to pay an all-in, non-reversionary fund of $2,100,000.00 (*i.e.*, the Gross Settlement Fund) as full and complete consideration for the Settlement. Agr. § VI.A. The Gross Settlement Fund shall also be used to pay: (i) the Cash Awards, (ii) the incentive award to named Plaintiffs, (iii) the attorneys' fees and reasonable costs award, (iv) administrative costs, and (v) taxes due in connection with the Settlement prior to distribution to the Class. *Id.* at § IV.A.

The amounts remaining after deducting (ii) through (v) above (the "Net Settlement Fund") shall be used to pay Valid Claims submitted by the Class Members. *Id.* at § IV.D.  Settlement Class Members who submit Valid Claims with Adequate Proof of Purchase shall be entitled to request a Cash Award of $25.00 per bottle of Covered Product, up to a maximum of four (4) bottles per household, or $100. *Id.*

### 2.    Injunctive Relief and Future Conduct by Defendant

Beginning 190 days after a final order and judgment, and continuing for thirty months, FoodState will change its labels of Covered Products so that they shall: (i) not use the phrase

"100% Whole Food Supplement" to describe the Covered Products; (ii) not use the phrase "Made in the USA" for products that do not meet the appropriate legal standards for such term; and (iii) not use the generic term "Vegetable Lubricant" in the additional ingredient list, but shall instead specify the specific name of the lubricant used, if any, in making the Covered Products. Agr. at § IV.F.1. FoodState will also set forth a link to FoodState's website for more information on the labels and use the terminology in the Supplemental Fact Box to show the combination of vitamins, minerals, and other ingredients with whole foods found in the Covered Products. *Id.* at § IV.F.1. These are significant and positive labeling changes for the benefit of consumers.

### 3. Contingent *Cy Pres* Distribution

If any amounts remain in the Net Settlement Fund after payment of items (i) through (v) above (*see supra* § IV.A), the Settlement Administrator shall make a distribution *cy pres* to a nonprofit organization, as agreed on by the Parties and the Court, with a total value that equals the amount remaining in the Net Settlement Fund. *Id.* at § IV.E.1. Similarly, any unclaimed funds or any funds from uncashed settlement checks shall be delivered to a *cy pres* recipient selected by the parties and approved by the Court. *Id.* at § III.B.1.(f). The Parties propose that any *cy pres* distribution of unclaimed funds be made to Feed The Children (www.feedthechildren.org) and Public Justice Foundation (https://www.publicjustice.net/missionpublic-justice-foundation), subject to Court approval. Kazerounian Decl., ¶ 18; *see also*, Exhibit A to Declaration of Jason A. Ibey ("Ibey Decl."), ¶ 28 (Declaration of F. Paul Bland, Jr. of Public Justice Foundation).

### C. SCOPE OF RELEASE

The scope of Release is in line with the scope of Plaintiffs' allegations in the Complaint, as well as claims under similar state statutes, concerning the alleged false advertising on FoodState's packaging. Agr. § VIII.T.

In exchange for the relief described above, all Settlement Class Members, other than those who exclude themselves from the Settlement, relinquish all claims against the Released Parties and arising out of: (i) a "Made in the USA," "100% Whole Food Supplement," and/or "Vegetable Lubricant" designation on or about a Product; (ii) representations by Defendant or third parties relating to where a Product or components/ingredients thereof were made, manufactured, or sourced; (iii) any violation or alleged violation of California CLRA, UCL and FAL; (iv) any violation or alleged violation of 15 U.S.C. § 45a, any federal statute, federal regulation, or statute of any of the fifty (50) states or any U.S. territory, including but not limited to consumer protection laws, false advertising laws, fraud, negligence, breach of warranty, and/or breach of contract claims; and/or (v) any other legal or equitable claims that are connected with the allegations in the Action, or that could have been presented in the Action. Agr. § VIII.T & IX.B.2. Further, Defendant and each Class Member waive the provisions of Section 1542 of the Cal. Civil Code (and all other like provisions of law) to the full extent that these provisions may be applicable. *Id*. at § IX.B.3. Expressly excluded from the Release are any claims for bodily injury. *Id*. at II.HH (page 8 of Agr.).

### D. SETTLEMENT CLAIMS PROCESS

To make a claim for monetary compensation, Settlement Class Members must submit a Valid Claim. Agr. at § V.A; Exhibit B to Ibey Decl., ¶ 29 (proposed Claim Form). To be considered a Valid Claim, a Settlement Class Member must: (i) complete a Claim Form by providing all of the requisite information (including but not limited to the names of the Covered Products purchased, the approximate date of purchase, and the quantity of Products purchased), (ii) sign the Claim Form under penalty of perjury, (iii) indicate whether he or she is enclosing Adequate Proof of Purchase, and (iv) either return the Claim Form and Adequate Proof of Purchase, if any, to the Claims Administrator or submit this information via the Settlement Website no later than ninety-

five (95) days after the Final Approval Hearing ("Claims Deadline"). *Id.* Only Settlement Class Members who submit Valid Claims shall be entitled to a Cash Award. *Id.* The Claims Administrator shall be responsible for determining the validity of all Claims. *Id.* at § V.B.

E.      **OPPORTUNITY TO OPT-OUT AND OBJECT**

Settlement Class Members will have the right to exclude themselves from the Settlement or object to the Settlement (Agr. § VII.C and D), which must be done within 105 days after entry of the Preliminary Approval Order (*id.* at § II.Y).

F.      **CLASS NOTICE**

Settlement Class Members are entitled to receive the "best notice practicable" under the circumstances. *Burns v. Elrod*, 757 F.2d 151 (7th Cir. 1985). Notice of class settlement under Rule 23(e) is required if the settlement binds the class. Fed. R. Civ. P. 23(e)(1). The class notice to be provided is explained in Section IX, below.  *See also*, Exhibits C-E to Ibey Decl., ¶¶ 30-32.

G.      **CLASS REPRESENTATIVES' APPLICATION FOR INCENTIVE AWARDS**

The proposed Settlement contemplates a request for an incentive award of $1,500 to be paid to each of the three named Plaintiffs (Kathleen Holt, Jose Ruvalcaba, and Stephanie Bauman) for their efforts in bringing and litigating this Action, subject to Court approval, which shall be paid at the same time as the attorneys' fees and costs payments to Class Counsel. Agr. § VI.B. Settlement Class Counsel supports that request as consistent with the following case holding: "Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit." *Scovil v. FedEx Ground Package Sys.*, 2014 U.S. Dist. LEXIS 33361, at *22 (D. Me. Mar. 14, 2014), citation omitted. Such service awards are well in line with other settlements involving consumer claims. *See e.g., Brenner v. J. C. Penney Co.*, No. 13-11212, 2013 U.S. Dist. LEXIS 149607, at *5 (D.Mass. Oct. 10, 2013) (approving $5,000 incentive award); *Arnold v. FitFlop USA, LLC*,

2014 U.S. Dist. LEXIS 58800, *6 (S.D. Cal. Apr. 28, 2014) (approving $1,500 service award).

**H.    CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND COSTS**

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). *See Grant v. Capital Mgmt. Servs., L.P.,* 2013 U.S. Dist. LEXIS 174190, at *3 (S.D. Cal. Dec. 11, 2013) (preliminarily approving class settlement where class counsel requested $475,000 in attorneys' fees and costs).

The Settlement contemplates that Settlement Class Counsel shall be entitled to apply to the Court for a combined award of attorneys' fees and litigation costs of up to 33.33% from the Settlement Fund. Agr. § VI.A. *See In re Stockeryale, Inc.,* No. 1:05cv00177-SM, 2007 U.S. Dist. LEXIS 94004, at *21 (D.N.H. Dec. 18, 2007) (awarding lead plaintiffs' counsel 33% of the gross settlement fund in fees). The amount of attorneys' fees was not discussed until after the parties negotiated the relief to the Settlement Class, and such discussions took place only during the mediation conducted by Judge Peter D. Lichtman (Ret.). *Id.* at § I.G; Kazerounian Decl., ¶ 10.

Should the Settlement be preliminarily approved, Plaintiffs intend to file a motion for attorneys' fees, costs, and incentive payments in advance of a fairness hearing and no later than 30 days before the expiration of the deadline to object to the settlement, consistent with the requirements of the Class Action Fairness Act.

**IV.    LEGAL STANDARDS FOR PRELIMINARY SETTLEMENT CLASS APPROVAL OF A CLASS ACTION SETTLEMENT**

A class action may not be dismissed, compromised, or settled without the approval of the Court. Fed. R. Civ. Proc. 23(e). It is well established that the law favors class action settlements. *See In re Relafen Antitrust Litigation*, 231 F.R.D. 52 (D.Mass. 2005); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75 (D.Mass. 2005). As a result, courts should exercise their discretion

to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); *Durrett v. Housing Auth.*, 896 F.2d 600, 604 (1st Cir. 1990).

The purpose of the preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See 4 Herbert B. Newberg, Newberg on Class Actions* § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004). The Court is not required to undertake an in-depth consideration of the factors for final approval at the preliminary approval stage.

Before making a final decision on the 'approval' of a settlement, a court must first make a "preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Hochstadt v. Boston Scientific Corp.*, 708 F.Supp.2d. 95, 107 (D.Mass. 2010). In considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits, *Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982).

The proposed settlement here satisfies all the requirements for preliminary approval.

## V.     THERE IS A PRESUMPTION OF FAIRNESS ATTACHED TO THIS SETTLEMENT AGREEMENT

The court may approve a settlement only if it conducts a fairness hearing and finds that the terms of the settlement are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Tyco Intern., Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 258-59 (D.N.H. 2007). This analysis requires scrutiny of the proposed settlement in order to fulfill the role as "a fiduciary for the absent class members." *Bezdek v. Vibram U.S.A. Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass. 2015).

A presumption of fairness attaches to a proposed settlement agreement "when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Lupron Mktg. & Sales Practices Litig.*, 345 F.Supp.2d 135, 137 (D.Mass. 2004), citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tanks Products Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *see also*, *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D.Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair.").

Public policy often favors settlement in complex class action cases. *See In re Pharm Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 (1st Cir. 2009) ("Achieving settlement in such cases is not easy. District judges must realistically evaluate settlements based on the circumstances of the case."). All of the factors here are met and preliminary approval is favored.

### A. ARM'S LENGTH MEDIATIONS BEFORE THE HON. JUDGE LEO PAPAS (RET.) AND THE HON. PETER D. LICHTMAN (RET.)

A presumption of fairness exists where a settlement is reached through arm's length bargaining. Newberg on Class Actions § 11.51. This Settlement was reached after the parties (i) investigated and researched their respective claims and defenses, (ii) discussed their positions, (iii) exchanged relevant documents, which, among other things, determined the putative class and appropriate notice, and (iv) participated in arm's length negotiations, in the form of multiple full-day mediations with some of the most respected and experienced mediators in California, the Hon. Leo Papas (Ret) and also the Hon. Peter D. Lichtman (Ret), Agr. § I.G., and through informal and formal confirmatory discovery, Kazerounian Decl., ¶¶ 8-14. The Settlement in this case is the result of vigorous, non-collusive, arm's length and informed settlement negotiations.

## B. SUFFICIENT DISCOVERY HAS BEEN COMPLETED TO ALLOW ALL PARTIES TO ACT INTELLIGENTLY

Plaintiffs and FoodState have completed sufficient informal and also formal discovery to understand each other's position in this Action, including a Fed. R. Civ. P. 30(b)(6) confirmatory deposition of FoodState. Kazerounian Decl., ¶ 14. Plaintiffs have conducted investigations into the business and business practices of FoodState, and Plaintiffs have also received and reviewed information from FoodState. Agr. § I.F. Therefore, sufficient discovery has been conducted.

## C. COUNSEL IS EXPERIENCED IN SIMILAR LITIGATION

Plaintiffs' Counsel represents that Proposed Settlement Class Counsel are highly experienced in prosecuting consumer class actions. Kazerounian Decl., ¶¶ 23-57; Declaration of Joshua B. Swigart ("Swigart Decl."), ¶¶ 7-12; Ibey Decl., ¶¶ 12-22. In particular, according to Plaintiffs' Counsel, Settlement Class Counsel have filed and successfully settled many "Made in the USA" false advertising cases, among others. Kazerounian Decl., ¶ 27.

## D. PLAINTIFFS DO NOT ANTICIPATE MANY OBJECTIONS

Settlement Class Members will have the right to opt out of the Settlement or to object to its terms. Agr. at § VI.D. Given the substantial monetary and non-monetary benefits of this Settlement, Plaintiffs do not anticipate that there will be many legitimate objections from the Class Members, who are entitled to request $25 to $100 (*id*. § IV.D.) and who only need to make a claim, either online or through mail, to receive a settlement check. Plaintiffs believe that the value received by this Settlement equals or exceeds the value representing a reduction in each product's respective value due to the alleged false advertising. As such, Plaintiffs and their counsel firmly believe that the Settlement Class Members will be happy with the Agreement, with very few objections, if any.

# VI. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS FOR PURPOSES OF SETTLEMENT

This Court must consider whether a class can be preliminarily certified under Rules 23(a) and (b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858 (1999). The parties here negotiated a settlement class that can be certified under Rule 23, in light of the applicable standards.

## A. THE PROPOSED CLASS IS SUFFICIENTLY NUMEROUS

A class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Scott v. First Am. Title Ins. Co.*, No. 06-cv-286, 2008 WL 1914296, at *2 (D.N.H. Apr. 28, 2008). "The exact numbers of class members need not be established, 'particularly where … only declaratory and injunctive relief is sought." *Kenneth R. ex rel. Tri-County CAP, Inc. v. Hassan*, 293 F.R.D. 254, (DD.N.H. 2013) (citing *Rolland v. Cellucci*, Civ. No. 98-30208, 1999 WL 34815562, at *3 (D.Mass. Feb. 2, 1999)). Rather, the court may draw a reasonable inference as to the class size based on the facts. *Id*.

Here, though the exact number of the class is unknown, it is believed to be in the hundreds of thousands due to the fact that FoodState sold millions of units of the Covered Products nationwide to retailer and distributors since 2011. *See In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 54 (D.Mass. 2010) ("*In re M3*") ("No purchaser records were maintained, so there is no possibility of locating, much less joining individually as plaintiffs, all of the potential class members."). Therefore, the numerosity requirement is satisfied.

## B. THE COMMONALITY REQUIREMENT IS SATISFIED

Plaintiffs and the Settlement Class Member must share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule." *In re Neurontin Mkg. & Sales Practices Litig.*, 244 F.R.D. 89, 105 (D.Mass. 2007). Plaintiffs

contend that commonality can be satisfied by a single common legal or factual issue, making it an easily satisfied prerequisite. *In re Sonus Networks, Inc., Sec. Litig.*, Civ. No. 04-10294, 2007 WL 2826622, at *4 (D.Mass. Sept. 25, 2007) *see also, Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *Amchem Products, Inc.,* 521 at 623.

Here, Plaintiffs contend that there are questions of law and fact common to Plaintiffs and the Settlement Class that predominate over any questions affecting only individual members of the Class.[5] First, all members of the Settlement Class had in common a purchase of one of Defendant's food products between January 15, 2011 and September 15, 2018, which had allegedly false, deceptive, and/or misleading packaging.

Plaintiffs identify the following questions of law and fact which they contend are common: (i) whether Defendant unlawfully labeled its Covered Products as being "Made in the USA" (or some derivative thereof); (ii) whether Defendant's conduct and representations constitutes violations of the FAL and UCL; (iii) whether the members of the Class sustained and/or continue to sustain damages attributable to Defendant's conduct, and, if so, the proper measure and appropriate formula to be applied in determining such damages; and (iv) whether the members of the Class are entitled to injunctive and/or any other equitable relief (Compl., ¶ 89). *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 338 (D.Mass. 2015) (finding commonality satisfied where "core issues of fact and law" regarding the alleged misrepresentation of health benefits where common to the class).

---

[5] Had this case gone forward, Defendant intended to oppose certification of any class, including by disputing Plaintiffs' interpretation and application of the law and facts.

14

### C. THE TYPICALITY REQUIREMENT IS SATISFIED

"Rule 23(a)(3) requires proof that plaintiffs' claims are typical of the class members' claims." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012). Plaintiffs contend that typicality is present where claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and … are based on the same legal theory." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)) (alterations in original). The typicality inquiry allows the court to "'align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Bos. Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 282 (D.Mass. 2009) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)).

In this case, Plaintiffs believe their claims are typical of the claims of the Settlement Class Members, as they arise from virtually the same factual basis. According to Plaintiffs, they, like members of the proposed Settlement Class, purchased Defendant's product after being exposed to virtually the same alleged material misrepresentations and/or omissions related to the product's packaging (*i.e.*, "Made in the USA," "100% Whole Food Supplements," and "Vegetable Lubricant") and allegedly received a product that contained foreign sourced ingredients or other materials from other sources. Compl., ¶¶ 2-18; Exhibit B, 22:10-26:15.[6] Plaintiffs contend this satisfies the typicality requirement as explained in *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, 2015 U.S. Dist. LEXIS 154602, *21 (D.N.H. Nov. 16, 2015) ("the class representatives' and other class members' claims are based on the same legal

---

[6] As an example, a prior product label is attached to the Declaration of Abbas Kazerounian as Exhibit D, and a new version of the label pursuant to the settlement is attached as Exhibit E.

theories, and arise from the same course of conduct — Colgate allegedly marketing Softsoap Antibacterial in a false and misleading way."); *In re M3*, 270 F.R.D. at 55 ("it is clear that the claims of the Representative Plaintiffs are based on the same event (purchase of an M3P razor based on misleading advertisements) as the potential class members. The legal theories of recovery for the Representative Plaintiffs are typical of those of the class as a whole.").

Plaintiffs contend that they are advancing the same type of fraud-based claims and legal theories on behalf of themselves and the Settlement Class Members. Compl., ¶¶ 31-43, and 90. FoodState has not to date established a defense unique to the Plaintiffs.

### D. THE ADEQUACY REQUIREMENT IS SATISFIED

Plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.*, 521 U.S. at 625. The First Circuit employs a two-part test in analyzing adequacy: (1) the class representatives' interest must not conflict with the interests of the class; and (2) class counsel is experienced, qualified and able to vigorously conduct the proposed litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *In re Bos. Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d at 282.

According to Plaintiffs and their counsel, they have no known conflicts of interest with other Settlement Class Members because, for purposes of the Settlement, Plaintiffs' claims are typical of (and virtually identical to) those of other Settlement Class Members who allegedly purchased one or more of FoodState's Covered Products. *See* Agr. § I.D.; Declaration of Kathleen Holt ("Holt Decl."), ¶¶ 12-13; Declaration of Jose Ruvalcaba ("Ruvalcaba Decl."), ¶¶ 12-13; Stephanie Bauman ("Bauman Decl."), ¶¶ 12-13; Kazerounian Decl., ¶ 6.

Plaintiffs initially began prosecuting the claims against FoodState when the matter was

filed in the Southern District of California on January 15, 2015. Kazerounian Decl., ¶ 8; Agr. § I.B. After the matter was voluntarily dismissed without prejudice upon joint motion of the parties and then re-filed in the District of New Hampshire, Plaintiffs took the Fed. R. Civ. P. 30(b)(6) confirmatory deposition of Defendant. Kazerounian Decl., ¶ 14. As mentioned above, the Parties also participated in two private mediations before experienced mediators in an effort to reach a class action settlement. *Id*. at 10.

According to Plaintiffs and their counsel, they share the common goal of protecting and improving consumer rights throughout the nation. *See* Holt Decl., ¶¶ 7-8; Ruvalcaba Decl., ¶¶ 7-8; Bauman Decl., ¶¶ 7-8; Kazerounian Decl., ¶¶ 23-31. Also, Plaintiffs' counsel has represented that they have extensive experience in litigation, including the prosecution of class actions seeking to protect consumer rights, and Plaintiffs' counsel are qualified and able to conduct this litigation. *See* Kazerounian Decl., ¶¶ 23-57; Swigart Decl., ¶¶ 7-13.

### E. COMMON QUESTIONS SUFFICIENTLY PREDOMINATE

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

As explained above in Section V.B., Plaintiffs contend the several common questions of fact and law satisfy the predominance requirement, and cite as support *Arnold v. FitFlop USA, LLC*, No. 11-CV-0973-W-KSC, 2014 U.S. Dist. LEXIS 58800, 2014 WL 1670133, at *2 (S.D. Cal. Apr. 28, 2014) (action certified for settlement purposes a nationwide class of purchasers of certain footwear who presented legal claims of misrepresentation of health benefits in violation of California consumer protection laws based on a price premium theory of injury); *In re M3,* 270 F.R.D. at 56 ("The dominant common questions include whether Gillette's advertising was false or misleading, whether the company's conduct violated the statutory and/or common law causes

of action delineated in the Amended Complaint, and whether the class members suffered damages as a result of this conduct.")

According to Plaintiffs, the central (and predominant) inquiry in this case is whether FoodState misrepresented its Products, in violation of California statutory law and common law, as being "Made in the USA" and "100% Whole Food Supplement," and did not adequately identify all ingredients such as stating only generically the use of "Vegetable Lubricant," such that Plaintiffs and the Settlement Class Members paid more for the products, or would not have purchased them, if the alleged misrepresentations were not present (*see* Compl., ¶¶ 8-17, and 46).

### F. VARIATIONS IN STATE LAWS PRESENT NO OBSTACLE TO CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

Plaintiffs contend that, across all of the types of claims in this action, courts in appropriate cases have certified classes—particularly settlement classes—in spite of the differences in each state's articulation of the applicable legal standard. *See In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 305-06 (E.D.N.Y. 2006) (citing illustrative cases); *see also, In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.,* 2017 U.S. Dist. LEXIS 170676, at *67-68 (D.Mass. Oct. 16, 2017). Also, manageability concerns do not exist in the context of settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Plaintiffs contend that, as demonstrated by the concurrently filed Plaintiffs' Memorandum Reviewing Relevant Laws of the Fifty States of the United States (the "Fifty State Memo."), "although variations in state law exist, they do not overcome the common factual and legal issues shared by the potential class members." *In re M3,* 270 F.R.D. 45, 60-61; *see also,* Fifty State Memo., at pp. 3-12.

Circuit courts have required that a rigorous analysis of state law variation must precede class certification in litigation classes, as opposed to settlement classes. The First Circuit has been

no less diligent in urging a "rigorous analysis" of the relation between merits claims and the requirements of Rule 23. *See generally*, *In re New Motor Vehicles Canadian Expert Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008). However, according to Plaintiffs, courts should remain sensitive to the "common core" of issues among plaintiffs, even if coupled with "disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Accordingly, Plaintiffs contend that this proposed class action settlement does not present any manageability concerns under Fed. R. Civ. P. 23(b)(3).

The Complaint alleges violations by FoodState of (1) California's Unfair Competition Law, Cal. Bus & Prof. Code § 17200; (2) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500; (3) California's Sherman Law, Health and Safety Code § 110660; (4) California's Bus. & Prof. Code § 17533.7 (California's Made in USA law); and (5) common law negligent and intentional misrepresentation. The statutes provide for injunctive relief and restitution (*see Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006)), except remedies for violation of the Sherman Law, Health and Safety Code § 110660 may be obtained, when appropriate, under the UCL's unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising (*see Trazo v. Nestlé USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 U.S. Dist. LEXIS 113534, at *13 (N.D.Cal. Aug. 9, 2013)).

Plaintiffs believe the fraud-based claims are more similar than dissimilar, and cite as support *In re Pizza Time Theatre Sec. Litigation,* 112 F.R.D. 15, 21 (N.D.Cal. 1986) ("The relevant laws in all states are far more similar to each other than they are different, and any prejudice to defendants is outweighed by the prejudice to plaintiffs and the states of not certifying the class;" recognizing "interest of all jurisdictions in litigating fraud-related claims"). Similar to *Pizza Time Theatre Sec. Litigation,* where "the entire purported class bases its claims upon the identical

conduct of defendants" (*id.*), Plaintiffs believe the alleged misconduct is virtually identical for advertising of the Covered Products, with an agreement under the proposed settlement for Defendant to cease using the phrases: 1) "100% Whole Food Supplement;" 2) Made in the USA;" and 3) the generic "Vegetable Lubricant" while specifying the specific lubricant used. [Agr. § IV.F.1.] *In re Pizza Time Theatre Sec. Litigation* further recognized that "the common law of many states may be less advantageous to defendants than is California law." *Id.*

As gleaned from the decision in *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301 (3d Cir. 2011), variations in state laws may not defeat predominance where the varying state laws can be grouped into common manageable patterns, and the potential need to apply different laws of the 50 states is diminished in the settlement class context. *See Donachy v. Intrawest United States Holdings, Inc.*, No. 10-4038 (RMB/KMW), 2012 U.S. Dist. LEXIS 34029, at *36 (D.N.J. Mar. 14, 2012). Plaintiffs find further support their contention in *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) ("Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class.") Plaintiffs contend this is especially the case in the settlement context where manageability is not much of a concern. *See Sullivan v. DB Invs., Inc.*, 667 F.3d at 302 (with a "settlement class" "the concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation.")

Moreover, Plaintiffs offer as further support for their contention *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004), which explained that "when dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class." Plaintiffs also refer the Court to *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000), in which the court held individual issues did not

predominate notwithstanding variations in twenty states' laws concerning reliance, waiver, and statutes of limitations. The *Waste Mgmt. Holdings* court opined that, "as long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification." Lastly, the Supreme Court noted in *Amchem Prods.* that, "whether trial would present intractable management problems… is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." 521 U.S. at 597.

Further, "Courts must remain sensitive . . . to the 'common core' of issues among plaintiffs, even if coupled with 'disparate legal remedies within the class.'" *In re M3*, 270 F.R.D. 45, 57. Although variations in remedies exist, this is an immaterial consideration within the settlement context. *See Carnegie v. Household, Int'l, Inc.*, 445 F. Supp. 2d 1032, 1035 (N.D. Ill. 2006) ("numerous courts have held that in determining a settlement value, the potential for treble damages should not be taken into account.")

Thus, given the similarity of the false advertising claims here under California state law and common law, variations in state laws do not defeat the predominance requirement of Rule 23(b)(3) in this settlement class where there are no manageability concerns and class members in each of the fifty states are entitled to a remedy under the proposed settlement.

### G. THE SUPERIORITY REQUIREMENT IS SATISFIED

Plaintiffs contend that a class action is a superior means for adjudicating this issue fairly and effectively. Plaintiffs further contend that where there are thousands of class members, each of whom has small individual claims that may not be worth pursuing independently, "a class action is the only feasible mechanism for resolving the dispute efficiently," *M3 Power Razor*, 270 F.R.D. at 56, and is clearly superior to "piecemeal adjudication of numerous separate lawsuits covering

the same or substantially similar issues." *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 273 (D.Mass. 2005). According to Plaintiffs, this class action is of that type. Plaintiffs believe it is clear, given the common interests across class members and the class representatives, that this class action "would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23 advisory committee's notes (1966)).

The District of New Hampshire is a superior forum for this class action, as FoodState is located in New Hampshire, the alleged misrepresentation occurred nationwide (including in New Hampshire), and there is no other pending similar litigation against FoodState. Although the causes of action are based on California statutes (the named Plaintiffs reside in California), New Hampshire also has consumer protection statutes, *see e.g.*, N.H. Rev. Stat. Ann. § 358-A:2 (proscribing "use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."). Such a settlement is appropriate given the small individual claims: Plaintiff Holt paid $36.99 (Compl., ¶ 33) and Plaintiff Ruvalcaba paid $37.96 (*id*. at 38). *See In re M3,* 270 F.R.D. at 56 (finding superiority satisfied, as the settlement "involve[ed] millions of potential plaintiffs with small individual claims, a class action is the only feasible mechanism for resolving the dispute efficiently.")

## VII. THE COURT SHOULD APPOINT THE CLASS REPRESENTATIVES AND CLASS COUNSEL

The adequacy of representation of the proposed Class Representatives and proposed Settlement Class Counsel requirement for the limited purposes of approving the settlement and a settlement class is satisfied. For settlement purposes, the Parties agree that Kathleen Holt, Jose Ruvalcaba, and Stephanie Bauman may be appointed as Class Representatives of the

Settlement Class. Agr. § III.B. Plaintiffs contend that they have adequately represented the class members through motion practice before the Southern District of California, two mediations with experienced mediators, and formal and informal discovery.

The Parties have agreed that Abbas Kazerounian, Joshua B. Swigart, and Jason A. Ibey may be appointed as Settlement Class Counsel for Plaintiffs and for all other purposes of the Settlement. *Id*. Mr. Kazerounian, Mr. Swigart, and Mr. Ibey have the requisite experience to serve as Settlement Class Counsel, as supported by their declarations. Kazerounian Decl., ¶¶ 23-57; Swigart Decl., ¶¶ 7-12; Ibey Decl., ¶¶ 12-12.

## VIII. THE PROPOSED NOTICE TO THE SETTLEMENT CLASS IS APPROPRIATE

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. Notice of the Settlement Agreement need not be sent to each individual member of the Settlement Class. *See Johnson v. Midland Credit Management Inc*., 2012 WL 5996391 (N.D. Ohio Nov. 29, 2012) (citing *Saltzman v. Pella Corp*., 257 F.R.D. 471, 476 (N.D. Ill. 2009) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536-37 (3d Cir. 2004)); *Macarz v. Transworld Sys., Inc.,* 201 F.R.D. 54, 59 (D.Conn. 2001) (notice by publication where circumstances "make it impracticable to gain the names and addresses of class members and notify them individually of the action's pendency"); *see also*, *Brenner v. J. C. Penney Co*., No. 13-11212, 2013 U.S. Dist. LEXIS 149607, at *3 (D.Mass. Oct. 10, 2013).

Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to

all class members who would be bound by the proposal." The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

"Courts have come to accept both email and internet notice campaigns as acceptable means of giving notice in class actions" and they "are beginning to embrace the belief that internet notice may be preferable to traditional methods of publication notice." *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. Pitt. L. Rev. 727, 733-734 (2008). Notice to the Class Members here will be provided through a combination of at least 207,000,000 internet banner advertisements throughout the United States via the Google Display Network, Yahoo! and Facebook (Exhibit E to Ibey Decl., ¶ 32), 1/2-page national publication in National Geographic (Exhibit C to Ibey Decl., ¶ 30), 1/8-page ad in *Los Angeles Daily News* (*id.*), and a detailed notice on the settlement website (Exhibit D to Ibey Decl., ¶ 31). Agr. at § II.G.; Declaration of Carla Peak (of Kurtzman Carson Consultants), ¶¶ 7-16, filed herewith.

Due to the lack of contact information for any significant portion of the individual purchasers of the Covered Products, and estimated size of the nationwide class in both population and geographic mass, notice by publication, internet-based notice, and notice on the settlement website are the only reasonable methods to reach to the Settlement Class Members.[7] *See e.g., In re Colgate-Palmolive*

---

[7] In early 2018, FoodState began selling its products online and has sold to only 280 persons. Ibey Decl., ¶ 7. Plaintiffs believe the best notice practicable here would not require Defendant to incur

*Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, 2015 U.S. Dist. LEXIS154602 at *28 (adequate class notice that provided for a press release, summary notice in the national edition of *USA Today*, an internet banner ad campaign, and posting of the notice on the settlement website).

The combined nationwide notice plan here is calculated to fulfill the requirements of adequate notice for due process purposes and should be preliminarily approved.

## IX.     A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The Parties respectfully request that a final approval hearing (fairness hearing) be scheduled no earlier than one hundred and fifty-four (154) days from the date the Court grants preliminary approval of the class action settlement.

## X.     CAFA NOTICE

The CAFA notice (28 U.S.C. § 1715(b)) has been provided by KCC, pursuant to Section § III.H (Ibey Decl., ¶ 11).

## XI.     CONCLUSION

In conclusion, Plaintiffs respectfully request that the Court enter an order: (i) preliminarily approving the proposed class action settlement; (ii) appointing Kathleen Holt, Jose Ruvalcaba, and Stephanie Bauman as Settlement Class Representatives; (iii) appointing Abbas Kazerounian, Joshua B. Swigart, and Jason A. Ibey as Settlement Class Counsel; (iv) approving notice to the Settlement Class Members; and (v) setting a final approval hearing.

---

the time and expense to retrieve contact information needed to send direct notice to such persons, especially where those individuals likely did not see (and thus did not rely upon) the allegedly offending advertising, since FoodState had already begun making labeling changes called for under the proposed settlement. *See id.*; *see also* Exhibit B, 22:4-9.

Dated: April 15, 2019

**KAZEROUNI LAW GROUP, APC**

BY: */S/ ABBAS KAZEROUNIAN*
Abbas Kazerounian, Esq.*
CA Bar # 249203
ak@kazlg.com
Jason A. Ibey, Esq.*
CA Bar # 284607
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costs Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
*Attorneys for Plaintiffs*

**HYDE & SWIGART**
Joshua B. Swigart, Esq.*
CA Bar # 225557
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
*Attorney for Plaintiffs*

*\* Admitted Pro Hac Vice*

**KELLY LAWP LLC**
James D. Kelly, Esq.
NH BAR # 16177
16 Broad Street
Nashua, NH 03064
JIM@KELLYLAWNH.COM
PHONE: 603-809-4230
FAX: 603-386-6669
*Attorney for Plaintiffs*